```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
 2                      ALEXANDRIA DIVISION

 3     --------------------------x
       UNITED STATES OF AMERICA, :    Criminal Action No.:
 4                               :    1:17-cr-270
            versus               :
 5                               :    Friday, December 9, 2022
                                 :
 6     AHMED AMEER MINNI,        :
       RAMY SAID ZAMZAM,         :
       AMAN HASSAN YEMER,        :
 7                               :
                 Defendants.     :
 8     --------------------------x

 9          The above-entitled status conference was heard
       before the Honorable Leonie M. Brinkema, United States
10     District Judge.  This proceeding commenced at 9:01 a.m.

11                     A P P E A R A N C E S:

12     FOR THE GOVERNMENT:   JOHN GIBBS, ESQUIRE
                             OFFICE OF THE UNITED STATES ATTORNEY
13                           2100 Jamieson Avenue
                             Alexandria, Virginia  22314
14                           (703) 299-3700

15     FOR THE DEFENDANT:    MARC EISENSTEIN, ESQUIRE
       (Minni)               COBURN & GREENBAUM, PLLC
16                           1710 Rhode Island Avenue, NW
                             2nd Floor
17                           Washington, D.C.  20036
                             (202) 470-2695
18
       FOR THE DEFENDANT:    JESSICA CARMICHAEL, ESQUIRE
19     (Zamzam)              CARMICHAEL ELLIS & BROCK
                             108 North Alfred Street
20                           1st Floor
                             Alexandria, Virginia  22314
21                           (703) 684-7908

22     FOR THE DEFENDANT:    NINA GINSBERG, ESQUIRE
       (Yemer)               DIMUROGINSBERG PC
23                           1101 King Street
                             Suite 610
24                           Alexandria, Virginia  22314
                             (703) 684-4333
25
                                                            1
```

```
 1   COURT REPORTER:          STEPHANIE M. AUSTIN, RPR, CRR
                              Official Court Reporter
 2                            United States District Court
                              401 Courthouse Square
 3                            Alexandria, Virginia  22314
                              (571) 298-1649
 4                            S.AustinReporting@gmail.com

 5        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                                                            2
```

```
1                    P R O C E E D I N G S
2           THE DEPUTY CLERK:  Criminal Case 17-270, United
3  States of America versus Ahmed Ameer Minni, Ramy Said Zamzam
4  and Aman Hassan Yemer.
5           Would counsel please note their appearances for
6  the record.
7           MR. GIBBS:  Good morning, Your Honor.  John Gibbs
8  on behalf of the United States.
9           THE COURT:  Good morning.
10          MS. GINSBERG:  Good morning, Your Honor.
11 Nina Ginsberg on behalf of Mr. Yemer, who is not here.  He
12 is still hospitalized.
13          THE COURT:  All right.  Thank you.
14          MR. EISENSTEIN:  Good morning, Your Honor.
15 Marc Eisenstein on behalf of Ahmed Minni, who's present.
16          THE COURT:  All right.  Good morning.
17          MS. CARMICHAEL:  Good morning, Your Honor.
18 Jessica Carmichael on behalf of Ramy Zamzam.
19          THE COURT:  And your client is here; correct?
20          MS. CARMICHAEL:  My client is present, yes, Your
21 Honor.
22          THE COURT:  All right.  Are we missing a third
23 defendant?
24          MR. GIBBS:  Judge, there's actually two additional
25 defendants, but they're both still in Pakistan.
```

3

```
 1              THE COURT:  All right.

 2              MR. GIBBS:  Mr. Kamens represents Mr. Chaudhry,

 3    and Pleasant Brodnax represents Waqar Khan.

 4              THE COURT:  And is there any information as to

 5    when they may be coming to the United States?

 6              MR. GIBBS:  So the most up-to-date information I

 7    have, Mr. Chaudhry has been detained in Pakistan by the

 8    Pakistani authorities pending our extradition request.

 9              THE COURT:  I'm sorry.  Has your extradition

10    request gone through yet?

11              MR. GIBBS:  It's gone through in the sense they

12    have it over there.

13              THE COURT:  They have it.  Okay.

14              MR. GIBBS:  And my understanding is that there is

15    a right of appeal in Pakistan, and it's not always easy

16    getting clear information from the Pakistani authorities.

17    So about the most I can say at this point is, we do

18    understand he's in custody pending the extradition; we don't

19    know if he's fighting it over there or not.

20              As to Mr. Khan, he is not in custody.  We've been

21    working with the LEGAT and Mr. Brodnax to try to get him to

22    turn himself in, and then he would be in the same position

23    as Mr. Chaudhry.  And ultimately, Your Honor, the -- one of

24    the key goals is obviously to do this as quickly as

25    possible, but also to bring them back to the United States
```

4

1    together.  It's -- as the Court, I'm sure, can well imagine,

2    it's quite a production to go over there and pick up these

3    defendants and bring them back.  So if we can do it just one

4    time, not twice, it would obviously be preferable.  But

5    we're trying to move it as quickly as we can.

6              THE COURT:  Well, at the same time, though, we

7    have two defendants who are awaiting resolution of this

8    case.  The third may or may not ever be able to have his

9    case resolved because of mental health issues, and we can't

10   just let this case linger.

11             MR. GIBBS:  Understood.

12             THE COURT:  All right.  Let me find out from

13   defense counsel who are here.  You know, I inherited this

14   case, so I haven't had it from the very beginning, but, in

15   going through the docket sheet this morning, I noticed a

16   significant number of matters that have a gavel on them.

17   And you all don't see them, as members of the public, but a

18   gavel is an internal notation to the Court that there's an

19   unresolved matter.

20             So I need to know from defense counsel, do any of

21   you feel that any motions that you have filed to date are

22   not yet fully resolved?  Is there anything that's

23   outstanding?  Are there any outstanding CIPA motions right

24   now?  Is there anything to do with discovery or sealing or

25   anything else?  I think everything has been resolved, but,

```
 1   for some reason, the clerk's office has not indicated that
 2   on the docket sheet.  So I'm just trying to find out for
 3   administrative purposes.
 4            MS. GINSBERG:  Judge --
 5            THE COURT:  Ms. Ginsberg.
 6            MS. GINSBERG:  -- as far as I'm aware, we have not
 7   been given any classified evidence yet.  I believe that
 8   there may be, but we have not been --
 9            THE COURT:  But as far as you're concerned on
10   behalf of your client, other than obviously the unresolved
11   issue of his mental health situation, you don't have any
12   pending motions right now that have not yet been addressed
13   by the Court?
14            MS. GINSBERG:  No.  No.  Except that I think it's
15   inevitable that we're going to file a motion to have the
16   case dismissed.
17            THE COURT:  Oh, I am sure you will.  That's fine.
18   All right.
19            How about other counsel?  Do you feel you've
20   had -- no.
21            MR. EISENSTEIN:  No, Your Honor.
22            THE COURT:  Ms. Carmichael, you shook your head.
23   I see it.
24            MS. CARMICHAEL:  No, Your Honor.
25            THE COURT:  All right.  That's fine.  Then I will
```
                                                              6

1    direct the clerk to remove all gavels in this case.

2              All right.  So this was set as a status hearing.

3    First of all, let's address any CIPA matters.  Does the

4    Government intend to use, in this case, any classified

5    material, and/or is there any classified material that

6    should, in fact, be disclosed to counsel under your

7    obligations through *Brady* and *Giglio*, et cetera?

8              MR. GIBBS:  Your Honor, I think there could well

9    be a fairly small amount of classified material.  We've been

10   working -- I've been working with the FBI, we've been trying

11   to deconflict as much of that as possible.  So when there's

12   duplicated material, some classified, some unclassified, we

13   obviously produce the unclassified, and I believe -- I have

14   the agents here.  If I could just have one moment to --

15             THE COURT:  Go ahead.

16             MR. GIBBS:  Thank you, Judge.

17                       (Pause.)

18             THE COURT:  While that's happening, are all

19   defense counsel cleared to receive classified information?

20             MS. GINSBERG:  Yes, Your Honor.  And while

21   Mr. Gibbs is conferring, we are aware that --

22             THE COURT:  Hold on one second.  Let him be -- he

23   needs to hear this.

24             MR. GIBBS:  Thank you, Your Honor.

25             Judge, as I suspected, there is still some

                                                              7

1    classified material with the FBI that is going through the

2    declass process.  If we're successful in that, it will not

3    be -- we'll not have to do it through the court security

4    officer; it can go over as standard discovery.  That is

5    still ongoing.  But the objective is to get to the point

6    where we'll have very little and perhaps no classified

7    material to be provided in discovery.

8              THE COURT:  All right.  Now, just so defense

9    counsel don't get nervous about this, when you say

10   "declassified," the document -- documents or document that

11   you're talking about, it doesn't change; it's just a

12   decision is made that it no longer needs to be classified.

13   Because, obviously, if you are editing anything out of it,

14   then I may have to review that to make sure it complies with

15   the rules.

16             MR. GIBBS:  That's correct, Judge.

17             THE COURT:  All right.  All right.  So everybody

18   understand that, Ms. Ginsberg?

19             MS. GINSBERG:  Yeah.  Just one -- so that the

20   Government is on notice so we're all talking about the same

21   barrel of classified information.

22             THE COURT:  Yeah.

23             MS. GINSBERG:  We're aware, and Mr. Gibbs has --

24   we've discussed this with Mr. Gibbs.  But there was evidence

25   introduced at the trial in Pakistan that was illegally

                                                              8

1    seized and may have been altered and would be evidence that

2    is not admissible in a court in this country.  And that may

3    be the subject of litigation, which the communications about

4    the admissibility of that evidence that the Government may

5    have had with Pakistani officials, I mean, that is an area

6    where I could see that there might be classified evidence

7    that is exculpatory to the defendants.  And I just want to

8    make sure that when the Government is reviewing what they

9    are considering declassifying or producing, that that is

10   within -- that's within the realm of what they're

11   considering.

12          THE COURT:  What is your understanding of the

13   overlap between litigation in Pakistan and the allegations

14   in this case?

15          MS. GINSBERG:  There was evidence -- they're

16   essentially the same charges.

17          THE COURT:  Do you not have a jeopardy claim?

18          MS. GINSBERG:  We may, but we have to -- we don't

19   have enough of the information about what happened at the

20   Pakistani trial to be able to make some of these arguments.

21          THE COURT:  But you know at this point what the

22   specific charges were in Pakistan; don't you?  Or have you

23   not gotten the Pakistan --

24          MS. GINSBERG:  We don't have Pakistan criminal

25   records, and they would all be in -- they'd need to be

9

```
 1   translated.
 2             THE COURT:  Has the Government not given those to
 3   you yet?
 4             MS. GINSBERG:  I don't know that the Government
 5   has them.
 6             THE COURT:  Well, you're going to have to produce
 7   them.  We need to get this case moving, Mr. Gibbs.
 8             If there's basically an overlap, if these men have
 9   been prosecuted in Pakistan and served significant periods
10   of incarceration in a Pakistani prison, and now the United
11   States Government is trying to charge them for essentially
12   the same conduct in this country, you've got to think about
13   whether that makes much sense.  All right.  I don't know
14   whether it does or doesn't, but clearly the Pakistani --
15   this case has been around for a while, and you need to get
16   the records from the Pakistani court.
17             MR. GIBBS:  And, Judge, we have those records.  I
18   believe some have already been provided.  And there is a --
19   there's a written judgment from the Pakistani court that if
20   it has not been provided, will be provided.
21             I would note that all the defendants were
22   represented by counsel in Pakistan.  It was my understanding
23   that the United States-based counsel had at least some
24   communications with them during the course of this 13-year
25   period.  That's actually more information than I think the
```

                                                              10

```
 1   U.S. Government has about what was going on, because we were
 2   not privy to the inner workings of that prosecution either.
 3   So we have -- there is a written judgment at the conclusion
 4   of the criminal case, but that's really about all we've got
 5   related to that prosecution.
 6          THE COURT:  All right.  Now, you have that in your
 7   possession, and has it been translated into English yet,
 8   Mr. Gibbs?
 9          MR. GIBBS:  The copy I've got is in English, yes,
10   Your Honor.
11          THE COURT:  I'd like to see a copy of that, so get
12   one filed with the Court; all right?
13          MR. GIBBS:  Sure.  I can file that.
14          THE COURT:  So I can get a better handle on
15   exactly what happened in Pakistan, and the next time I see
16   you all, we'll be in a better shape to talk about that.
17          MS. GINSBERG:  I can just tell you, I'm the lawyer
18   that had communication with the counsel who was representing
19   at least Mr. Yemer.  And I didn't get a lot of information,
20   but my discussions with that lawyer involved allegations
21   that the Pakistanis had manufactured evidence that was
22   admitted in the trial against them, and they were fighting
23   what would essentially have been a suppression motion here
24   to exclude evidence that they claimed that the Pakistanis
25   manufactured.
```

```
 1              THE COURT:  But here's my point, if the
 2   convictions that resulted from possibly tainted evidence are
 3   essentially what are involved in this case, you're going to
 4   have a very good jeopardy argument, in my view; all right?
 5              MS. GINSBERG:  Yes.
 6              THE COURT:  So you may not want to keep --
 7              MS. GINSBERG:  Yes.
 8              THE COURT:  You may not want to undo that
 9   conviction.
10              MS. GINSBERG:  I'm -- you know, as convinced as I
11   can be as a lawyer sitting here about what happened over
12   there, these charges all arose out of actually the
13   families -- if the Court wants a little bit of background,
14   the families of these defendants came to my office when they
15   believed that their sons had fled and wanted to notify the
16   FBI to have the FBI try and prevent them from getting to
17   Pakistan.  And it was communications between the FBI and the
18   Pakistani law enforcement authorities, as far as I know,
19   that resulted in their ultimate arrest.  And they were
20   charged for what probably -- we would certainly -- if we
21   were in a court here, and they had been prosecuted here, we
22   would be making a double jeopardy claim.
23              THE COURT:  All right.  Well, we'll have to see
24   how that works out.
25              Nevertheless, this case came on for a status
```

Stephanie Austin, RPR, CRR USDC/EDVA (571) 298-1649

1    hearing.  So in terms of status, I want to get you a trial

2    date.  All right.  We need to get this case moving.  So I

3    don't understand why there's this delay.

4              Mr. Gibbs, as best you can tell from the quantum

5    of evidence that you believe you've got, are you 60 percent?

6    70 percent?  100 percent?  Where are you in terms of your

7    discovery presentation to the defense?

8              MR. GIBBS:  Judge, I think probably over about

9    70 percent that has been produced.  We've got another batch

10   that was just processed in our office, I believe the week of

11   Thanksgiving.  That will go over very shortly.

12             So in terms of the volume of discovery, the

13   defense has received more than half of it and will be -- and

14   have another good-sized batch coming here very shortly.

15             THE COURT:  And this evidence is coming from

16   Pakistan, or is it coming from the FBI?  I mean, how is this

17   discovery being generated?

18             MR. GIBBS:  We really have no evidence to speak of

19   from Pakistan.  This has been generated by the FBI.  The

20   latest batch we have, it's a lot of search warrant returns,

21   so it's emails, various communications among the defendants.

22             THE COURT:  Within the United States?

23             MR. GIBBS:  Within the United States, that's

24   correct, Judge.

25             THE COURT:  Before they went to Pakistan?

                                                              13

1          MR. GIBBS:  Before they went to Pakistan, that's

2    right.

3          THE COURT:  If you're able to -- and you may not

4    be able to say this in open court whether there's any FISA

5    information in this case?

6          MR. GIBBS:  Yeah, I can't.

7          THE COURT:  You can't reveal that, but you

8    certainly should be able to reveal that to defense counsel.

9          MR. GIBBS:  Correct.

10          THE COURT:  And they're all cleared, so let's get

11    this case moving.  All right.

12          It sounds to me as though we need to probably do

13    one more status hearing just to see how things are going?

14          MR. GIBBS:  We would agree with that, Judge.  And

15    I would note that I've had very productive discussions with

16    Mr. Zamzam and Mr. Minni's counsel.  I'm optimistic that we

17    can get this resolved, so I think that's another good reason

18    to set a status conference, and, in the interim, we'll work

19    very diligently, if we're able to, to try to resolve this

20    case.

21          THE COURT:  All right.  A month?  30 days enough

22    time for defense counsel to be in a position to give the

23    Court a better sense of whether the case is, as to your

24    respective clients, going to be going to trial or about to

25    be resolved?

                                                              14

```
1              MR. GIBBS:  Judge, with the Court's indulgence,
2    could we ask for maybe 45 or 60 days just to give us a bit
3    of time?  We also have the holidays coming up, and it gets a
4    little bit tricky.  And I would note, I believe
5    Ms. Carmichael is currently in trial.
6              THE COURT:  All right.  Early February then.  How
7    about February 14?  We'll do it on Valentine's Day.  Does
8    that work for you all?
9              MR. GIBBS:  That's good for the Government, Judge.
10             THE COURT:  Ms. Carmichael?
11             MS. CARMICHAEL:  That works for counsel for
12   Mr. Zamzam.
13             THE COURT:  All right.  That will be at 9:00.
14   It's a Tuesday.
15             Does that work for you, Ms. Ginsberg?
16             MS. GINSBERG:  Yes, Your Honor.
17             MR. EISENSTEIN:  Yes, Your Honor.
18             THE COURT:  All right.  That's fine.  So 9:00 on
19   Tuesday, February 14.
20             And Ms. Ginsberg, I see your letter, and I'll have
21   this made part of the record.
22             So Mr. Yemer is in the hospital?
23             MS. GINSBERG:  Your Honor, he is hospitalized, as
24   far as -- his father is here, he visits him every day.  His
25   condition really has not improved.  They actually have a
```

                                                                  15

1    sitter who sits with him 24 hours a day because he has to be

2    taken to the bathroom, he has to be dressed.  This is really

3    a tragic, tragic situation.

4         THE COURT:  It's tragic.  The Government needs to

5    address Mr. Yemer's situation very, very quickly.  This

6    doesn't appear to make any good sense to keep this matter

7    pending against him if his condition is so severe.  I would

8    just expect you, Mr. Gibbs, to really look carefully as to

9    whether there is any legitimate reason to continue to

10   proceed against him.

11        MR. GIBBS:  Understood, Judge.  And I can get with

12   Ms. Ginsberg, and, undoubtedly, my office will ask for some

13   specific information.  I will work with her to try to get

14   them that information.  And I understand exactly what the

15   Court is saying, and I'll make efforts to try to resolve

16   this piece of the case.

17        THE COURT:  All right.  That's fine.  So we'll

18   have this made part of the record, all right, Ms. Ginsberg?

19        MS. GINSBERG:  Yes.  Thank you.  That's what I --

20        THE COURT:  Do you want it under seal?

21        MS. GINSBERG:  Yes, please.

22        THE COURT:  Under seal.  All right.

23        Anything further on this case?

24        MR. GIBBS:  Nothing from the Government, Judge.

25   Thank you.

                                                          16

```
 1              THE COURT:  Anything from defense counsel?  Are
 2    there any other issues that any of you want me to address?
 3              Yes, sir.
 4              MR. EISENSTEIN:  Yes, Your Honor.  With respect to
 5    the Government's second discovery production, they've
 6    requested a specific hard drive that I believe costs around
 7    $400, and we've been -- Ms. Ginsberg and I have been
 8    discussing that with the CJA coordinator, and I'm not sure
 9    they're going to reimburse us, because neither counsel has
10    one.  So I wasn't sure with the Government if we could just
11    maybe share the material.  I think Ms. Carmichael has this
12    specific drive from another case.  I don't know if the
13    Government will allow us to share that drive or if there's
14    specific discovery or if the Government can produce it in
15    another format.  Otherwise, we can't access or can't obtain
16    the second batch of discovery.
17              THE COURT:  Ms. Carmichael, is that a problem for
18    you?
19              MS. CARMICHAEL:  Your Honor, the only reason that
20    I actually have this $400 hard drive is because, in another
21    case in the District of Columbia federal court, also a CJA
22    case, they required me to purchase this hard drive, and I
23    was told that I would be reimbursed.
24              The only issue that I have sharing that hard drive
25    with counsel and other defense counsel is that, because I
```

17

```
 1   had to get this for another case, that other discovery
 2   covered by a protective order is also on there.  And while
 3   the Government was able to load theirs on, I'm not sure
 4   how -- I suppose I could maybe try to password protect that
 5   particular folder, and that might work.
 6              THE COURT:  Let me just ask this, Mr. Gibbs, is
 7   there any reason that cannot be produced in a different
 8   format?
 9              MR. GIBBS:  My understanding is it cannot be
10   produced in a different format.
11              Again, I'm not an IT person, I don't know the
12   exact ins and outs of why that's the case, but we spent a
13   lot of time talking through the IT folks about this and the
14   people in my office, and they were very firm that it had to
15   be on this particular hard drive.
16              THE COURT:  All right.  That's fine.  Send me a
17   motion specifically describing exactly what the piece of
18   equipment is and what the cost is.  I'm going to approve it.
19   All right?
20              MR. EISENSTEIN:  Thank you, Your Honor.
21              THE COURT:  I'm going to have -- we'll give
22   Larry Dash a heads-up that I'm approving it, it has to be
23   done, and you won't have a problem.
24              MR. EISENSTEIN:  Thank you, Your Honor.  We'll do
25   that.
```

```
 1              THE COURT:  Ms. Ginsberg, do you need it as well?

 2              MS. GINSBERG:  No.  I was going to say, if there

 3    were ever a time I would need it, I think I would be able to

 4    share it.

 5              THE COURT:  Terrific.  Okay.  All right.  So we'll

 6    take care of that.

 7              MR. EISENSTEIN:  Thank you, Your Honor.

 8              THE COURT:  Anything else we need to address?

 9    Mr. Gibbs, anything from the Government?

10              MR. GIBBS:  No, Your Honor.  Thank you.

11              THE COURT:  You're all free to go.  Thank you.

12              MS. GINSBERG:  Thank you, Your Honor.

13                   (Proceedings adjourned at 9:20 a.m.)

14              ---------------------------------

15    I certify that the foregoing is a true and accurate

16    transcription of my stenographic notes.

17                              _____

18                              Stephanie M. Austin, RPR, CRR

19

20

21

22

23

24

25
```

19